## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

|  |  |
|---|---|
| NANCY PATEL, *et al*.,<br>　　　　　　*Plaintiffs*,<br><br>　　v.<br><br>*DAB INSPECTION AND CONSULTING*<br>*SERVICES, LLC, et al.*,<br>　　　　　　*Defendants*. | No. 1:24-cv-859-AJT-WEF |

### REPORT AND RECOMMENDATION

This matter is before the Court on Plaintiffs Nancy Patel and Krish Chandra's Motion for Default Judgment as to Defendants Babu Ramaraj, Vijayalakshmi Murugesan, and DAB Inspection and Consulting Services, LLC (Dkt. 97). Pursuant to 28 U.S.C. § 636(b)(1)(C), the undersigned United States Magistrate Judge has reviewed the Motion and relevant pleadings and is filing with the Court these proposed findings of fact and recommendations, a copy of which will be provided to all interested parties.

For the reasons set forth below, the undersigned recommends that the Court **GRANT** Plaintiffs' Motion for Default Judgment (Dkt. 97) as to Defendant Murugesan on Count 1; **AWARD** Plaintiffs $188,000 in compensatory damages and $14,570 in prejudgment interest, along with post-judgment interest, for which Murugesan alone shall be liable; **DENY** Plaintiffs' Motion for Default Judgment (Dkt. 97) in all other respects; and **DISMISS** the remaining claims without prejudice.

## I.    PROCEDURAL HISTORY

Plaintiffs Nancy Patel and Krish Chandra ("Plaintiffs") initiated this civil action against Defendants Babu Ramaraj, Vijayalakshmi Murugesan, and DAB Inspection and Consulting Services, LLC (collectively, "DRM Defendants") on May 22, 2024, asserting various causes of action, including violations of the Virginia Security Laws as well as fraud, breach of contract, and negligence.  These claims arise out of DRM Defendants' alleged operation of a Ponzi scheme, which caused Plaintiffs to lose $188,000. *See generally* Dkt. 1 ("Complaint").

The Clerk of Court issued summons to DRM Defendants on the original Complaint. However, these were all returned unexecuted by Plaintiffs' counsel shortly after the filing of the First Amended Complaint ("FAC")–which named additional defendants Hari Madamalla and Uday Yallapragada and alleged new federal securities law counts–on July 19, 2024. Dkts. 12, 13, 14, 15.

Thereafter, summons were issued to all Defendants (Dkt. 18), with service completed on July 27, 2024 as to Defendants Madamalla, Murugesan, Yallapragada, and on July 29. 2024 as to Defendants Ramaraj and DAB Inspection and Consulting Services, LLC. Dkts. 26, 27, 28, 29, 30.

Yallapragada and Madamalla appeared by counsel (Dkts. 21, 31) and moved to dismiss the FAC on September 3 and September 4, 2024, respectively. Dkts. 34, 38. The Honorable Anthony J. Trenga, Senior United States District Judge, entered a Scheduling Order initiating discovery in this matter on September 4, 2024 (Dkt. 37), but later vacated the Order and stayed discovery pending resolution of the motions to dismiss. Dkts. 46, 52.

Plaintiffs opposed the motions to dismiss (Dkts. 57, 58) and moved to file a Second Amended Complaint ("SAC"). Dkts. 53, 54-1.[1] Plaintiffs, along with Yallapragada and Madamalla, all by counsel, appeared before the undersigned for a hearing on November 1, 2024, at which the motion to file the SAC was granted in part and denied in part.[2] Dkt. 75.

Subsequently, Judge Trenga denied the motions to dismiss the FAC as moot on November 4, 2024. Dkt. 76. Plaintiffs voluntarily dismissed Yallapragada from this action on November 29, 2024 (Dkts. 80, 81) and Madamalla (who had initially moved to dismiss the SAC) was dismissed on December 31, 2024 (Dkts. 86, 87).

Thereafter, on January 13, 2025, Judge Trenga ordered Plaintiffs to obtain a default from the Clerk and move for default judgment as to the remaining DRM Defendants. Dkt. 88. Pursuant to Federal Rule of Civil Procedure 12(a)(1)(A)(i)'s requirement that, absent waiver of service, a defendant must serve a responsive pleading within 21 days after being served with a summons and complaint, Murugesan had until August 17, 2024 to respond to the FAC and DAB and Ramaraj had until August 19, 2024 to respond to the FAC.[3] None of the DRM Defendants did so.

Plaintiffs requested entry of default against DRM Defendants for failure to plead or otherwise defend under Rule 55(a) on January 14 and 15, 2025 (Dkts. 89, 90, 95), and the Clerk entered default on January 15 and 16, 2025 (Dkts. 93, 94, 96).

---

[1]    The SAC added factual allegations and refined certain of the claims, but did not assert any new claims against DRM Defendants. (*See generally* Dkt. 64-1). The SAC was also served on DRM Defendants by first class mail in accordance with Rule 5(b)(2)(C). (*See* Dkts. 53, 54).

[2]    The undersigned permitted filing of the SAC as to Counts 1 (as to Madamalla and Yallapragada, on control person theory only), 2, 3, 5, and 6, and refused filing of the SAC as to Counts 4, 7, and 8. (Dkt. 75). The SAC was deemed filed as of November 1, 2024. (*Id*.)

[3]    Because DRM Defendants had not pleaded, defended, or appeared in this matter in any form by August 19, 2024, Plaintiffs could have moved for entry of default against DRM Defendants earlier than they ultimately did. And, despite being served with the SAC by mail pursuant to Rule 5(b)(2)(C), DRM Defendants failed to respond to the SAC within the 14-day period applicable to amended pleadings pursuant to Rule 15(a)(3).

Plaintiffs then moved for default judgment against DRM Defendants on January 31, 2025 on Counts 1, 2, 3, and 6.[4] Dkt. 97. The undersigned held a hearing on Plaintiffs' motion on February 28, 2025, at which Plaintiffs appeared through counsel, but no one appeared on behalf of the DRM Defendants. Dkt. 102, 103. The undersigned took the motion under advisement to issue this report and recommendation.

Plaintiffs were permitted to submit supplemental briefing on various issues related to the motion, which they filed on March 14, 2025. Dkts. 103, 105.

The undersigned's review of the entire record as of the date of the filing of this Report and Recommendation confirms that DRM Defendants have never responded to the Complaint or otherwise participated in this civil action.

## II.    LEGAL STANDARD

Rule 55 of the Federal Rules of Civil Procedure calls for a two-step process for obtaining a default judgment. First, the plaintiff must request entry of default by the Clerk of Court against the defendant for "fail[ure] to plead or otherwise defend," by which liability is admitted. *See* FED. R. CIV. P. 55(a); *City of New York v. Mickalis Pawn Shop, LLC*, 645 F. 3d 114, 128 (2d Cir. 2011). Next, the plaintiff must apply to the Court for the actual default judgment, which "converts the defendant's admission of liability into a final judgment that terminates the litigation and awards the plaintiff any relief to which the court decides it is entitled…." *Mickalis Pawn Shop, LLC*, 645 F. 3d at 128; FED. R. CIV. P. 55(b)(2).

"A court confronted with a motion for default judgment is required to exercise sound judicial discretion in determining whether the judgment should be entered, and the moving party is not entitled to default judgment as a matter of right." *JTH Tax, Inc. v. Grabert,* 8 F. Supp. 3d

---

[4]    Although Plaintiffs initially seemed to suggest that they were seeking default judgment on Counts 1, 2, 3, 5, and 6, *see* Dkt. 97, they later clarified that they were withdrawing the civil conspiracy claim in Count 5 (Dkt. 105).

731, 736 (E.D. Va. 2014). On a motion for default judgment, the defendant in default is deemed to have admitted the complaint's non-conclusory "well-pleaded allegations of fact" and the Court is to determine whether those facts state a valid facial claim for relief as a matter of law. *GlobalSantaFe Corp. v. Globalsantafe.com,* 250 F. Supp. 2d 610, 613 n.3 (E.D. Va. 2003); *Grabert*, 8 F. Supp. 3d at 736, 739 (citing *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face); *Burbach Broad Co. of Delaware v. Elkins Radio Corp.*, 278 F. 3d 401, 406 (4th Cir. 2002) (court will "assume the facts alleged in the complaint are true and draw all reasonable factual inferences in [the plaintiff's] favor"). Damages alleged in the Complaint, however, are not deemed admitted by a defaulting defendant: rather, the Court "must make an independent determination regarding damages," including by reliance on affidavits or documentary evidence in the record. *See Wilcox v. Transmodal Solutions, LLC*, 473 F. Supp. 3d 574, 584 (E.D. Va. 2020); FED. R. CIV. P. 8(b)(6).

In no case, however, may a default judgment be entered "against a minor or incompetent person" unless that person is "represented by a general guardian, conservator, or other like fiduciary who has appeared." FED. R. CIV. P. 55(b)(2).

## III.    JURISDICTION AND VENUE

In this case, the Court must have both subject matter jurisdiction and personal jurisdiction over DRM Defendants, and venue in this judicial district must be proper before the Court can render a default judgment. The undersigned finds that service of process as to Ramaraj and DAB was improper, meaning that the Court lacks jurisdiction over the case as to them. Additionally, the undersigned finds that the Court cannot enter default judgment against Ramaraj because he is an unrepresented incompetent person due to his current imprisonment on his felony conviction.

A.  Subject Matter Jurisdiction

The undersigned finds that the Court has proper subject matter jurisdiction over this case. Specifically, the Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331 with respect to DRM Defendants on Counts 3 (Section 10b violation) and 6 (Section 20A Control Person Liability), as these counts arise under federal statutes.

The undersigned further finds that the Court has diversity subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 with respect to DRM Defendants on Virginia law Counts 1 (VA Securities Law) and 2 (Fraud). On these, the Complaint asserts an amount in controversy of at least $188,000 (the amount paid by Plaintiffs on the promissory note but not recovered), which is in excess of the $75,000 statutory minimum.[5] 28 U.S.C. § 1332(a). There is further complete diversity of citizenship between the parties, as Plaintiffs are natural person citizens of Georgia, and DRM Defendants are citizens of the Commonwealth of Virginia.[6]

B.  Personal Jurisdiction

The undersigned finds that the Court has proper personal jurisdiction over DRM Defendants. General "at home" personal jurisdiction exists with respect to Ramaraj and Murugesan

---

[5]    The undersigned finds the amount-in-controversy to be claimed in good faith. *Wiggins v. N. Am. Equitable Lif. Assur. Co.*, 644 F. 2d 1014, 1016 (4th Cir. 1981).

[6]    Diversity of citizenship is evaluated on the facts as they exist at the time of filing. *Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 571 (2004). At the time of the filing of this suit, Ramaraj and Murugesan were citizens of Virginia who maintained their residence in Loudoun County. (SAC ¶ 13). That Ramaraj subsequently became incarcerated in the Bureau of Prisons due to his conviction following plea in *United States v. Ramaraj*, No. 1:24-cr-147-CMH (E.D. Va. July 26, 2024) has no effect on his citizenship for diversity purposes as "prisoners usually retain the domicile they had prior to incarceration." *Ownby v. Cohen*, 19 F. Supp, 2d 558 (W.D. Va. 1998). Further, DAB is a Virginia LLC whose members are Ramaraj and Murugesan, thus making DAB a citizen of Virginia. *Central West Virginia Energy Co., Inc. v. Mountain State Carbon, LLC*, 636 F. 3d 101, 103 (4th Cir. 2011) (citizenship of LLC determined by citizenship of members); *see* Virginia State Corporation Commission Clerk's Information System Business                        Entity                        Search, https://cis.scc.virginia.gov/EntitySearch/BusinessInformation?businessId=1074536&source=FromEntityResult&isSeries%20=%20false. Lastly, DRM Defendants appeared by counsel and filed an answer admitting that they were diverse with North Carolina plaintiffs in *Gudena et al v. DAB Inspection and Consulting Services LLC, et al*, Dkt. 28 ¶ 17, No. 1:24-cv-722-CMH-LRV (E.D. Va. Feb. 21, 2025).

because they are natural person citizens of the Commonwealth of Virginia residing in Loudoun County. *See Goodyear Dunlop Tire Operations S.A. v. Brown*, 564 U.S. 915, 919 (2011). Similarly, DAB's contacts with the Commonwealth are so "continuous and systematic" as to also permit general personal jurisdiction over it, given that it is organized under the laws of Virginia, its members are domiciled in Virginia, and its corporate headquarters is in Virginia.[7]

C. Ramaraj's Capacity to be Sued

Before proceeding further, the undersigned notes that this civil case arises within the broader context of a massive criminal pyramid scheme involving defendant Ramaraj. In connection with that scheme, Ramaraj has been ordered to forfeit over $9.3 million, multiple pieces of real property, and luxury vehicles to the United States. Additionally, he must pay over $15.6 million in restitution to his victims, including $188,000 to Plaintiffs Patel and Chandra. Ramaraj is currently serving a 90-month federal prison sentence at FCI Schuylkill in Pennsylvania. *See, e.g.*, Plea Agreement and Statement of Facts, Dkts. 32, 33, *United States v. Ramaraj*, No. 1:24-cr-147-CMH (E.D. Va. July 26, 2024); Consent Order of Forfeiture, Dkt. 34, *United States v. Ramaraj*, No. 1:24-cr-147-CMH (E.D. Va. July 30, 2024); Restitution Order and Sealed Attachment A, Dkts. 51, 54, *United States v. Ramaraj*, No. 1:24-cr-147-CMH (E.D. Va. Oct. 25, 2024).

Because Ramaraj is incarcerated pursuant to a felony conviction, he is considered incompetent to be sued without the appointment of a guardian ad litem under both federal and Virginia law.

---

[7]    SAC ¶ 14. In the alternative, the Court possesses specific personal jurisdiction over DAB as to comport with federal due process and the Virginia long-arm statute, Va. Code Ann. 8.01-328.1, for the above reasons, as well as the fact that the events alleged in the SAC substantially took place within Virginia. (*See generally* SAC; Dkt. 54-2 (promissory notes signed and notarized in Loudoun County)).

Federal courts may not enter a default judgment "against a minor or incompetent person" unless that person is "represented by a general guardian, conservator, or other like fiduciary who has appeared." FED. R. CIV. P. 55(b)(2). Federal Rule of Civil Procedure 17(b)(1) provides that a natural person's (not acting as a representative) capacity to be sued is determined by the law of that person's domicile. Rule 17(c)(2) further requires a court to "appoint a guardian ad litem—or issue another appropriate order—to protect a minor or incompetent person who is unrepresented in an action." FED. R. CIV. P 17(c)(2).

Because prisoners usually retain the domicile they had before incarceration, *Ownby*, 19 F. Supp. 2d at 563, and Ramaraj was domiciled in Virginia prior to imprisonment, Virginia law governs whether he qualifies as an incompetent person. *Commodity Futures Trading Commission v. Tate Street Trading, Inc.*, No. 3:19-cv-690-JAG, 2020 WL 12442918, at *1 (E.D. Va. Aug. 10, 2020) (citing *Nationwide Prop. & Cas. Ins. Co. v. Fraraccio*, No. 1:16-cv-1485-TSE, 250 F. Supp. 3d 5, 6 n.2 (E.D. Va. 2017)).

Under Virginia law, a "person under a disability" includes "a person convicted of a felony during the period he is confined." Va. Code Ann. § 8.01-2. "A suit wherein a person under a disability is a[n] [unrepresented] party defendant shall not be stayed because of such disability, but the court in which the suit is pending . . . shall appoint a discreet and competent attorney-at-law as guardian ad litem to such defendant, whether the defendant has been served with process or not." Va. Code Ann. § 8.01-9(A). However, if the incarcerated felon is represented by counsel who has entered an appearance in the case, the appointment of a guardian ad litem is not required. *Id*. § 8.01-9(B).

Here, Plaintiffs have named Ramaraj, an unrepresented incarcerated felon, as a defendant. Therefore, Rule 17(c)(2) mandates that the Court appoint a guardian ad litem to protect his

interests. Plaintiffs have neither sought such an appointment, nor has the Court appointed one. Without a guardian ad litem, the case cannot proceed against Ramaraj, nor can a default judgment be entered. *See e.g.*, *Tate Street Trading, Inc.*, 2020 WL 12442918, at *2 (citing Rule 17(c)(2), adopting Va. Code Ann. § 8.01-9, in denying motion for reconsideration of denial of default judgment against an unrepresented Virginia felon-defendant incarcerated in federal prison); *Fraraccio*, 250 F. Supp. 3d at 6 n.2 (observing that plaintiff's motion to appoint guardian ad litem to represent unrepresented Virginia felon-defendant incarcerated in state prison was granted as required by Rule 17(c)(2), adopting Va. Code Ann. § 8.01-9).

Furthermore, the fact that Ramaraj (as well as Murugesan and DAB) is represented by counsel in a factually-adjacent case involving different plaintiffs in *Gudena et al v. DAB Inspection & Consulting Services LLC et al*, No. 1:24-cv-722-CMH-LRV, does not cure this deficiency. Virginia law requires that Ramaraj be represented by counsel who has entered an appearance in this specific case for the exception to apply.

Accordingly, because Ramaraj is an unrepresented incarcerated felon deemed incompetent under federal and Virginia law, this case cannot proceed against him, nor can a default judgment be entered.

### D.  Service of Process

For related reasons, service of process on Ramaraj and DAB was also defective. "Service of process is a jurisdictional requirement: a court lacks jurisdiction over the person of a defendant when that person has not been served." *Pardazi v. Cullman Medical Center*, 896 F. 2d 1313, 1318 (11th Cir. 1990); *In re Outboard Marine Corp.*, 369 B.R. 353, 358 (Bankr. N.D. Ill. 2007) (collecting cases) ("As a result, a default judgment obtained after improper service is void.").

Here, the filed returns of service indicate that: (1) Ramaraj was served with process pursuant to Va. Code Ann. § 8.01-297 on July 29, 2024 (Dkt. 26); (2) DAB was served with process via its registered agent[8] Ramaraj pursuant to Va. Code Ann. §§ 8.01-297, 13.01-1018 on July 29, 2024 (Dkt. 30); and (3) Murugesan was served with process pursuant to Va. Code Ann. § 8.01-296 on July 27, 2024 (Dkt. 28).[9]

With respect to Ramaraj, he pleaded guilty in the federal criminal case against him on July 26, 2024, and was remanded to the custody of the United States Marshal on the same day. *United States v. Ramaraj*, Dkt. 31, 1:24-cr-147-CMH (E.D. Va. July 26, 2024). He was thus held in the

---

[8] As of May 18, 2024, DAB's registered agent is Babu Ramaraj. https://cis.scc.virginia.gov/EntitySearch/BusinessInformation?businessId=1074536&source=FromEntityResult&isSeries%20=%20false.

[9] Va. Code Ann. 8.01-296(2)(b) provides for substituted service by posting of process at the main entrance of a natural person's usual place of abode, "provided that not less than 10 days before judgment by default may be entered, the party causing service or his attorney or agent mails to the party served a copy of such process and thereafter files in the office of the clerk of the court a certificate of such mailing." Under Section 8.01-296(2)(b), "the house must be defendant's usual place of abode, so that when he returns home, the copy of the process posted on the front-door will operate as notice . . . the law does not mean the last place of abode . . . it is only the door of his then present residence where the notice may be posted in compliance with the law." *Painter v. Blue Ridge Regional Jail Authority*, 2019 WL 302509, at *2 (W.D. Va. Jan. 23, 2019) (collecting cases) (cleaned up) (quoting *Earle v. McVeigh*, 91 U.S. 503, 508 (1875)). Here, Murugesan was served by posting at the main entrance of her home in Aldie, Virginia on July 27, 2024. Dkt. 28. Murugesan was also mailed (to the same Aldie address) a copy of the currently operative SAC on October 3, 2024, as well as the default judgment motion and all attachments on January 31, 2025. Dkt. 53, 54, 97. Plaintiffs also provided a copy of the SAC to DRM Defendants' counsel in the *Gudena* case. Dkt. 105-9.

The undersigned finds that service on Murugesan at the Aldie address was proper because it was her "usual place of abode," at least based on the current record and public, judicially noticeable (albeit unusual) facts. Notably, in the related *Gudena* case in which DRM Defendants appeared by counsel, Murugesan was personally served at the Aldie address on May 14, 2025. Affidavit of Service, Dkt. 7, *Gudena et al v. DAB Inspection and Consulting Services et al*, No. 1:24-cv-722-CMH-LRV (E.D. Va. May 14, 2025). The undersigned observes that the Aldie home was the subject of a consent order of forfeiture entered by the Court in the criminal case against Ramaraj entered on July 30, 2024, just several days after posting occurred on July 27, 2024. *See* Dkt. 34 at 1–2, *United States v. Ramaraj*, No. 1:24-cr-147-CMH (July 30, 2024). However, no known facts establish that Murugesan was ever required to vacate the Aldie home as a result of the forfeiture order. Moreover, the United States moved to vacate the consent forfeiture order as to the Aldie home on April 23, 2025 because it was no longer pursuing the Aldie home for forfeiture due to low net equity. Dkt. 64, *United States v. Ramaraj*, No. 1:24-cr-147-CMH (April 23, 2025). And, although Plaintiffs' counsel was informed by two sources that they believe Murugesan was in India as of February 2025, counsel has not been able to verify whether this information is accurate or true. Dkt. 105 at 4. Accordingly, there is sufficient reason to believe that the Aldie home was Murugesan's usual place of abode at the time of posting and at all times of Plaintiffs' mailings.

custody of the Marshal at the Alexandria Detention Center, operated by the City of Alexandria Sheriff's Office, pending sentencing.

Va. Code Ann. § 8.01-297 provides:

"In all actions against one who has been convicted of a felony and is confined in a local or regional jail or State correctional institution, process shall be served on such convict and, subject to § 8.01-9, a guardian ad litem shall be appointed for him. Such service may be effected by delivery to the officer in charge of such jail or institution whose duty it shall be to deliver forthwith such process to the convict."

The service return indicates that pursuant to Section 8.01-297, the process server delivered the FAC and summons for service on Ramaraj to Deputy H. Villatoro, who was "found to be in charge and accepted the documents," at the Alexandria Detention Center on July 29, 2024. Dkt. 26.

Assuming that the Alexandria Detention Center under contract to the U.S. Marshal qualifies as a "local or regional jail or State correctional institution," and that Ramaraj was confined there pursuant to his federal felony conviction, service under Section 8.01-297 was nonetheless ineffective. This is because, by its plain text, the statute requires compliance with Section 8.01-9 for service to be effective.[10]

As discussed above, Ramaraj is an unrepresented "person under a disability" under Sections 8.01-2(6)(a) and 8.01-9, which mandate appointment of a guardian ad litem. Plaintiffs never moved for such an appointment, nor did the Court appointed one to represent Ramaraj's interests.

---

[10]    Indeed, to read Section 8.01-297 otherwise would put it in tension with Section 8.01-9, as it would make little sense for an incarcerated, unrepresented felon to effectively be considered competent for purposes of receiving service but not for purposes of legal capacity to be sued generally.

No other federal or state rule authorized service on Ramaraj in the manner used here.[11] *Cf.* Fed. R. Civ. P. 4(g) ("A minor or an incompetent person in a judicial district of the United States must be served by following state law for serving summons or like process on such a defendant in an action brought in the courts of general jurisdiction of the state where service is made.") Accordingly, service on Ramaraj was improper under Federal Rule of Civil Procedure 4(g).

Service on DAB was also defective. DAB was served via Ramaraj at the Alexandria Detention Center by delivery to the officer in charge pursuant to Va. Code Ann. §§ 8.01-297, 13.01-1018, because Ramaraj is DAB's registered agent. Dkt. 30.

However, Federal Rule 4(h) permits service on an organization within a judicial district of the United States only "in the manner prescribed by Rule 4(e)(1) for serving an individual" (following state law), Fed. R. Civ. P 4(h)(1)(A), or "by delivering a copy of the summons and of the complaint to . . . [an] agent authorized by appointment or by law[.]" Fed. R. Civ. P 4(h)(1)(B).

DAB could not have been properly served by service on Ramaraj under Section 8.01-297 pursuant to Rule 4(h)(1)(A), because Rule 4(e)(1) prescribes state law methods only for "an individual other than . . . an incompetent person" and does not embrace state law methods of service on incompetent persons, whose service is separately governed by Rule 4(g).

Nor was service proper under Federal Rule 4(h)(1)(B) because:

(1) Rule 4(h)(1)(B) cannot be read to embrace Section 8.01-297 service on an incompetent agent, as this would circumvent the requirements of Rule 4(h)(1)(A);

(2) "delivery" under Rule 4(h)(1)(B) requires personal service on the registered agent, not service through an intermediary such as a deputy sheriff. *See e.g.*, *Wesenberg v. New Orleans*

---

[11]     To the extent that Plaintiffs apprised DRM Defendants' counsel in *Gudena* of this matter, such contacts did not rise to the level of service of process, nor does the fact that counsel represents DRM Defendants in a separate but related matter indicate that such counsel has been authorized to receive process on behalf of DRM Defendants generally or in the case at hand.

*Airport Motel Associates TRS, LLC*, 2015 WL 5599012 (E.D. La. Sept. 22, 2015) (collecting cases);

(3) Section 8.01-297 does not authorize service on an entity, only on an individual defendant;

(4) And, as explained above, service on Ramaraj under Section 8.01-297 was ineffective due to failure to comply with Section 8.01-9.

Accordingly, service on Ramaraj and DAB was not properly effectuated. The undersigned therefore recommends that the Court deny the Motion for Default Judgment and dismiss this action without prejudice as to Ramaraj and DAB for failure to properly serve under Federal Rule of Civil Procedure 4(m).

E.  Venue

The undersigned finds that venue in this district is proper under 28 U.S.C. § 1391(b)(2). The Eastern District of Virginia is a district in which a "substantial part of the events or omissions giving rise to the claim occurred," as the relevant underlying actions and omissions occurred in Loudoun County, the location of DAB's office, and elsewhere within this judicial district. (*See generally* SAC; Dkt. 54-2 (promissory notes signed and notarized in Loudoun County)).

## IV.    SUFFICIENCY OF CLAIMS PURSUANT TO RULE 12(B)(6)

A.  Default as to Murugesan

The Clerk properly entered default as to Murugesan based on her failure to plead or otherwise defend in this action pursuant to Federal Rule 55. Dkt. 96. As a result, Murugesan is deemed to have admitted all well-pleaded factual allegations in the SAC. On the present motion

for default judgment, the undersigned applies a Rule 12(b)(6) standard to determine whether those admitted allegations state a plausible claim for relief.[12]

By contrast, because service was not properly effected on Defendants Ramaraj and DAB, and because no guardian ad litem was appointed for Ramaraj, default should be set aside and the motion for default judgment as to those defendants denied.[13]

---

[12]    The undersigned observes that facts undisputably admitted and established in other cases pertaining to Ramaraj are relevant to the current motion and are properly subject to judicial notice for the truth of the matters they assert. *See, e.g.*, Plea Agreement, Dkt. 32, *United States v. Ramaraj*, No. 1:24-cr-147-CMH (E.D. Va. July 26, 2024); Statement of Facts, Dkt. 33, *United States v. Ramaraj*, No. 1:24-cr-147-CMH (E.D. Va. July 26, 2024) (hereinafter "Plea SOF"); Report & Recommendation as to Motion for Default Judgment, Dkt. 17, *Securities & Exchange Commission v. Ramaraj*, No. 1:24-cv-1282-CMH-LRV (E.D. Va. April 22, 2025), *R&R adopted*, Dkt. 17, (E.D. Va. June 13, 2025) (hereinafter "SEC R&R"); *Gen. Elec. Cap. Corp. v. Lease Resolution Corp.* 128 F. 3d 1074, 1081 (7th Cir. 1997) (judicial notice of adjudicative fact in court records may be appropriate if "not subject to reasonable dispute" and either "generally known within the territorial jurisdiction of the trial court" or "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.").

Additionally, the undersigned considered the Statement of Facts filed in support of the plea in Ramaraj's criminal case and facts of  complaint in the SEC civil case against Ramaraj (as accepted by the court in the default Report and Recommendation in that case) in evaluating whether the SAC stated a claim for relief and whether certain allegations of the SAC were well-pleaded (but did not necessarily deem them admitted by Murugesan outright) because such documents, though extrinsic to the SAC, were served by Plaintiffs on Murugesan at her Aldie home in accordance with Rule 5(b)(2)(C). (*See* Dkt. 105 at 22, 105-1)."The Federal Rules of Civil Procedure expressly permit a court, in granting a default judgment, to consider extrinsic evidence to, among other reasons, 'establish the truth of any allegation.'" *In re Wolf*, 644 B.R. 725, 755 (N.D. Ill. 2022). While some courts hold that a court should not look beyond the "four corners of the complaint" in assessing liability under Rule 55(b)(2) based on the rationale that "a defendant should be able to review a complaint, and, if it is confident that the complaint fails to state a claim for relief, elect to conserve its resources and not defend the case," the undersigned finds that "this rationale does not apply with great force" where a movant properly serves extrinsic evidence relied upon in the default judgment motion such that "it would not be unfair to say that [defendant] should have reassessed the strength of [plaintiff's] case upon receipt" of the evidence. *See Ayers v. Receivables Performance Management, LLC*, 2016 WL 5402962, at *5 (E.D. Mich. Sept. 28, 2016) (collecting cases); *United Staes v. Bayley*, 2023 WL 3093126, at *6 n.4 (W.D. Wash. April 27, 2023) (considering photographs submitted in support of motion for default judgment, which was properly served with the motion for default judgment by ECF, email, and mail, based on *Ayers*); *Gomez v. El Rancho de Andres Carne de Tres Inc.*, 2014 WL 1310296, at *4 (E.D.N.Y. March 11, 2014) ("[m]oreover, it would be inefficient to require plaintiff to file an amended complaint to add the additional allegations contained in his affidavit [because Rule 5(a)(2) excuses service of such an amended complaint on a defendant in default]).

A more comprehensive background description of the fraud at hand may be found in the Statement of Facts filed in support of the plea and the SEC Report and Recommendation.

[13]    Accordingly, Ramaraj and DAB are not deemed to have admitted any facts alleged in the SAC, and the undersigned will not conduct a Rule 12(b)(6) analysis of the claims as to them.

B. Sufficiency of the Allegations Against Murugesan

As an initial matter, the undersigned finds that much of the SAC contains either material irrelevant to Murugesan or impermissibly conclusory allegations. Fundamentally, the SAC alleges that Plaintiffs were defrauded into paying $200,000 in exchange for a promissory note that offered exorbitant interest and minimal risk, as part of a broader Ponzi or pyramid scheme. *See, e.g.*, SAC ¶¶ 25–40.[14]

While the SAC frequently attributes the alleged misconduct to "Defendants" or "DRM Defendants" (defined to include DAB, Ramaraj, Murugesan, Yallapragada, and Madamalla), it relies heavily on improper group pleading and fails to provide particularized facts specific to Murugesan. *See, e.g.*, *Langford v. Joyner*, 62 F. 4th 122, 125–26 (4th Cir. 2023) (collecting cases); *see also Iron Workers Local 16 Pension Fund v. Hilb Rogal & Hobbs Co.*, 432 F. Supp. 2d 571, 594 (E.D. Va. 2006) ("group pleading is insufficient to plead with the particularity required by Rule 9(b)"); *Bateman Litwin N.V. v. Swain*, 2008 WL 11378796, at *6 (E.D. Va. June 5, 2008). Accordingly, Murugesan should not be deemed to have admitted all of the SAC's allegations, particularly conclusory or generalized allegations that lack specific factual support.

C. Murugesan's Alleged Role

The SAC and supporting materials establish that, from approximately January 2024 to May 2024, Ramaraj operated a fraudulent investment scheme. Through DAB, he solicited funds from investors under the false pretense of raising capital for large-scale government engineering projects. *See, e.g.*, SAC ¶¶ 25–58, 79–81; Plea SOF ¶¶ 10–16; SEC R&R at 2–7. In truth, DAB had no such contracts, and Ramaraj provided investors with unregistered promissory notes that promised high interest rates, which he later failed to honor. *Id.*

---

[14]    As discussed below, Plaintiffs recovered $12,000 from Ramaraj resulting in the requested compensatory damages award of $188,000.

None of the DRM Defendants were registered as broker-dealers in Virginia, and the promissory notes themselves were not registered with the Virginia State Corporation Commission. SAC ¶¶ 141, 143. As part of his scheme, Ramaraj held investor pitch meetings, including one at DAB's office (and via Zoom) in September 2022, during which he misrepresented DAB's business operations and financial health. SAC ¶¶ 37, 41–43; Plea SOF ¶ 13(j). SEC R&R at 4, 5. Plaintiffs' friend Kiran Dandu was one prospective investor in attendance at the September 2022 meeting, and he subsequently purchased a promissory note.[15] SAC ¶¶ 38, 44. Dandu purchased a second promissory note in July 2023. *Id*. ¶¶ 45–46. In August 2023, Dandu referred Plaintiff Krish Chandra to Ramaraj, and Ramaraj contacted Plaintiffs, and stated that they could invest in the August raise and welcomed them to the DAB family. *Id*. ¶¶ 47–49. Ramaraj represented to Plaintiffs that DAB was financially healthy, had a burgeoning book of construction contracts for which DAB needed additional funding, and offered 72% interest on Plaintiffs' investment with no reasonable possibility of loss. *Id*. ¶¶ 25–34, 50–58. Based on these representations, Plaintiffs purchased a $200,000 promissory note. *Id*. After making two $6,000 payments on the note in November and December 2023, Ramaraj and DAB failed to make any further payments as required by the note. *Id*. ¶¶ 33–34.

Although the SAC attributes much of the foregoing misconduct to the "Defendants" or "DRM Defendants" collectively, the undersigned cannot conclude, based on the current record, that this designation consistently includes Murugesan. The specific allegations in the SAC, along

---

[15]     Indeed, Ramaraj owes Kiran Dandu restitution under the restitution order entered in the criminal case. Restitution Order and Sealed Attachment A, Dkts. 51, 54, *United States v. Ramaraj*, No. 1:24-cr-147-CMH (E.D. Va. Oct. 25, 2024).

with the materials Plaintiffs submitted in support of default judgment, attribute the majority of the alleged misconduct to individuals other than Murugesan—most notably Ramaraj himself.[16]

The SAC alleges that Murugesan is a 49% owner of DAB, and the promissory note signed by Plaintiffs bears her signature on behalf of DAB, alongside Ramaraj. SAC ¶ 122; Dkt. 54-2 at 10. She also previously served as DAB's registered agent. Plea SOF ¶ 3.[17] Moreover, in Ramaraj's federal criminal case, he admitted wiring $200,000 in fraud proceeds to an Indian bank account for Murugesan's benefit, although those funds did not come from Plaintiffs specifically. Plea SOF ¶¶ 4, 17.

These facts, though limited, are sufficient to support the conclusion that the SAC states a claim against Murugesan as to some, but not all, of the asserted causes of action. As discussed below, her ownership interest in DAB, role in executing the promissory note, and receipt of fraud

---

[16]    *See, e.g.*, SAC ¶¶ 49 ("Defendant Ramaraj represented that [Plaintiffs] could invest in the August raise; and welcomed the couple to the DAB family"), 50 ("To induce Plaintiffs to invest in DAB . . . Defendant Ramaraj and DAB represented that DAB was then in a sound and healthy financial condition and that the Company had secured contracts for which it needed additional funding for the contract bonds"), 59–95 (alleging Madamalla, amongst other things, knowingly controlled DAB and the fraud / promissory note scheme, participated in pitch meetings, originated the note scheme, and benefited from "sweetheart deals"), 96–119 (largely the same as to Yallapragada), Affidavit of Krish Chandra, Dkt. 97-2 ¶¶ 10 ("Babu owned his own corporation, DAB. He was the principal. His company had employees and trucks."), 12 ("Babu texted me saying 'Welcome to the DAB family.'"), 13 ("Babu represented to me that we could invest for the August 2023 raise."), 14 ("Babu generated the Promissory Note document and sent it over to me"), 16 ("Babu was also offering a very handsome interest rate. I knew others were getting the same or similar interest rates so I believed Babu."), 17 ("Babu was in a rush so the signing of the Promissory Note and wiring of the $200,000 happened very quickly.").

In Plaintiffs' Supplemental Memorandum in Response to the undersigned's February 28, 2025 Order (Dkt. 105), Plaintiffs ask that the Court accept the allegations in the defaulted SEC Complaint against Ramaraj as true in considering the current motion for default judgment. Dkt. 105 at 6. However, Murugesan was never a party to the SEC case and cannot be deemed to have admitted the allegations in the SEC Complaint. Moreover, the allegations of the SEC Complaint (as accepted by the Court in that case) even more squarely attribute essentially every aspect of the fraud to Ramaraj and not others such that they are not conducive to establishing Murugesan's liability here. *See* SEC R&R at 2–7.

[17]    *See    also    RA    History*, https://cis.scc.virginia.gov/EntitySearch/BusinessInformation?businessId=1074536&source=FromEntityResult&isSeries%20=%20false.

proceeds sufficiently connect her to the underlying misconduct for purposes of default judgment on certain counts.

D.  Count 1: Violation of the Virginia Securities Act.

Count 1 of the SAC asserts that Murugesan violated the Virginia Securities Act ("VSA"). SAC ¶¶ 136–175. Specifically, the SAC contends that Murugesan violated Va. Code Ann. § 13.1-522(A)(i) because she sold the note as an unregistered security as an unregistered broker-dealer in violation of Va. Code Ann. §§ 13.1-504, 13.1-507. SAC ¶¶ 137–143. The SAC also contends that Murugesan violated Section 13.1-522(A)(i) because she defrauded Plaintiffs and made untrue statements or omissions of material fact in selling the promissory note to Plaintiffs in violation of Va. Code Ann. §§ 13.1-502. *Id.* ¶¶ 144–146. SAC ¶¶ 149–175. Count 1 states a claim against Murugesan in part.

First, Murugesan committed a direct violation of Section 13.1-522(A)(i) by way of Sections 13.1-504 and 13.1-507. Section 13.1-501 defines a security under the VSA as including "any note," which plainly includes promissory notes. *Welsh v.* Commonwealth, 246 Va. 337, 337 n.1 (1993). Section 13.1-507 makes it unlawful for any person to offer or sell any security, including promissory notes, unless the security is registered, subject to exemption, or a federal covered security. Section 13.1-504 makes it unlawful for any person to transact business in Virginia as an unregistered broker-dealer or an agent, except in transactions exempted by Section 13.1-514(B).

Here, Murugesan, by signing on behalf of DAB, sold the promissory note to Plaintiffs in violation of Section 13.01-504, as she was not a registered "agent" in Virginia.[18] Murugesan

---

[18]    Although the SAC claims a violation of Section 13.01-504 based on Murugesan being an unregistered "broker-dealer," the definition of "broker-dealer" does not include "any individual who, as a director, officer, partner, associate, employee, or sales representative of a broker-dealer or issuer, effects or undertakes to effect sales of securities" subject to certain nonapplicable exemptions. Va. Code Ann. § 13.1-501(A). An "issuer" is defined as "any

further violated Section 13.01-507 because the note sold to Plaintiffs was not registered and no exemption applies.[19]

However, the SAC does not plausibly allege that Murugesan committed a direct violation of Section 13.1-522(A)(i) via Section 13.1-502. Section 13.1-502 makes it unlawful, in connection with the offer or sale of securities, for any person to: (1) employ any device, scheme, or artifice to defraud; (2) obtain money or property by means of any untrue statement of a material fact or omission of a material fact necessary to make the statements made not misleading; or (3) engage in any act or practice that operates as a fraud or deceit upon the purchaser. Va. Code Ann. § 13.1-502.

Although the SAC does not specify which prong of Section 13.1-502 Murugesan is alleged to have violated—offering no explanation whatsoever—it appears to assert a violation of all three. However, the SAC fails to state a claim under any prong, as it contains no plausible allegations of affirmative fraud by Murugesan. Specifically, it does not allege any facts showing that Murugesan was aware of, much less actively involved in, the Ponzi scheme at the center of Ramaraj's fraud.

Plaintiffs' strongest argument against Murugesan is that she violated the law by failing to disclose material facts necessary to make Ramaraj's misrepresentations non-misleading. However, the SAC does not allege that Murugesan had actual knowledge of Ramaraj's false statements regarding DAB's alleged government contracts—statements that Plaintiffs claim induced their investment in the promissory notes. Absent any specific facts indicating that Murugesan was aware

---

person who issues or proposes to issue a security." *Id*. DAB is thus an issuer and Murugesan effected DAB's sale of securities, making her an "agent." In any case, whether Murugesan is an "agent" or a "broker-dealer" is immaterial as a violation of Section 13.01-504 is established either way.

[19]    Notably, the registration exemption for sales of securities by issuers or by a registered broker-dealer/agent acting on behalf of an issuer that do not result in the issuer having more than 35 security holders where the issuer's securities have not been offered to the general public by advertisement or solicitation does not apply. Va. Code Ann. 13.1-514(A)(7)(a). Promissory notes similar to that of Plaintiffs were sold to dozens of people, so DAB had more than 35 security holders by the time Plaintiffs purchased their note. SAC ¶¶ 35, 40; SEC R&R at 17.

of these misrepresentations or Ramaraj's broader fraud scheme, she cannot be held liable for failing to correct them. Accordingly, the SAC fails to state a claim against Murugesan for a direct violation of Va. Code § 13.1-522(A)(i) via § 13.1-502.

Additionally, regarding the fraud, given the current dearth of facts showing Murugesan had personal involvement in Ramaraj's interactions with Plaintiffs up to the signing of the note, Murugesan can only be held liable under Count 1 as a control person or via piercing of the corporate veil. *See Wenzel v. Knight*, 2015 WL 3466863, at *5 (E.D. Va. June 1, 2015); *Berglund v. Cynosure, Inc.*, 502 F. Supp. 2d 949, 954–55 (D. Minn. 2007).

It cannot reasonably be contested that Ramaraj, acting on behalf of himself and DAB, committed a primary violation of Section 13.1-502 by obtaining Plaintiffs' funds by making material false statements and omissions regarding DAB's financial condition, business prospects, and the intended use of the Plaintiffs' money, all as part of a broader fraudulent scheme. *See* Dkt. 97-2 ¶ 20; *see also* SEC R&R at 11, 12 (finding same conduct established Section 10(b) violation by Ramaraj).

However, Murugesan is not a control person under the VSA nor does the SAC claim that she was.[20] The VSA defines "control" as "the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise." Va. Code Ann. § 13.1-501(A). "Every person who directly or indirectly controls a person liable under [Va. Code Ann. § 13.1-522(A), (B)], including every partner, officer, or director of such a person, every person occupying a similar

---

[20]    The SAC cited Va. Code Ann. § 13.1-522(C) generally and stated that Count 1 applied to "All Defendants." However, the SAC expressly claimed that Madamalla and Yallapragada, as opposed to Murugesan, were VSA control persons. SAC ¶¶ 149–174. Indeed, the SAC specifically stated that Madamalla and Yallapragada demanded 1% ownership stakes "to provide [them] the controlling vote over Defendant Ramaraj [] and Defendant Murugesan." *Id.* ¶ 122. The undersigned finds that the SAC does not provide sufficient notice of a VSA control person theory. In any case, the facts available do not support a finding that Murugeasn is a VSA control person.

status or performing similar functions, every employee of such a person who materially aids in the conduct giving rise to the liability, and every broker-dealer, investment advisor, investment advisor representative or agent who materially aids in such conduct shall be liable jointly and severally with and to the same extent as such person, unless able to sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist." Va. Code Ann. § 13.1-522(C).

However, "[a]n individual's position alone does not establish control person liability." *In re Constellation Energy Group, Inc. Sec. Litig.*, 738 F. Supp. 2d 614, 639–40 (D. Md. 2010) (addressing Exchange Act Section 20); *Atcocha Ltd. P'ship v. Witness Tree, LLC*, 65 Va. Cir. 213, *9 (Va. Cir. Ct. 2004) (observing that VSA provisions at issue closely track federal law and thus federal cases concerning control are informative) ("Whether a party is a controlling person is an intensely factual question . . . . a director is not automatically liable as a controlling person").

As discussed above, the current record, while suggesting that Murugesan's actions may have incidentally facilitated Ramaraj's fraud, contains no facts indicating that she exercised control—or had the ability to control—Ramaraj or DAB's actions. To the contrary, the record reflects that Ramaraj operated the scheme single-handedly, directing virtually every aspect of it, irrespective of Murugesan's formal status as DAB's 49% co-owner.

For similar reasons, there is no basis to pierce the corporate veil to hold Murugesan personally liable. Piercing is warranted "only under the extraordinary circumstances where the [officers] sought to be held personally liable have controlled or used the corporation to evade a personal obligation, to perpetrate fraud or a crime, to commit an injustice, or to gain an unfair advantage." *Dana v. 313 Freemason*, 266 Va. 491, 554 (2003) (cleaned up); *Cheatle v. Rudd's Swimming Pool Supply Co., Inc.*, 360 S.E. 2d 828, 831 (Va. 1987). Piercing is "justified when the

unity of interest and ownership is such that the separate personalities of the corporation and the individual no longer exist and to adhere to that separateness would work an injustice." *Id*. Although DAB may have been used to perpetrate fraud and injustice, the SAC does not allege facts showing that DAB was Murugesan's alter ego or that it was used or controlled by her. Rather, the SAC suggests that DAB functioned as the alter ego only of Ramaraj, the mastermind behind the fraud.

Accordingly, Count 1 of the SAC states a claim against Murugesan in part.

E.  Count 2: Fraud.

Count 2 of the SAC seeks to hold Murugesan liable for fraud based on alleged false representations made in connection with the sale of the promissory note. However, as discussed above, the SAC fails to plead sufficient facts to support a fraud claim against Murugesan.

To state a claim for actual fraud under Virginia law, the plaintiff must prove, by clear and convincing evidence, the following six elements: "(1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled." *Brown v. Gilner*, No. 1:10-cv-00989 (E.D. Va. Sep. 25. 2012) (*citing Evaluation Research Corp. v. Alequin*, 247 Va. 143, 148 (1994)). A finding of actual fraud also requires "clear and convincing evidence that one has represented as true what is really false, in such a way as to induce a reasonable person to believe it, with the intent that the person will act upon this representation." *Id.* (citing *McMillion v. Dryvit Sys., Inc*., 262 Va. 463, 471 (2001) (internal quotation marks omitted)). A promise may constitute a misrepresentation of present fact and support a claim for actual fraud if the defendant had no intention of performing at the time the promise was made. *Id.* (citing *Supervalu, Inc. v. Johnson*, 276 Va. 356, 368 (2008) (internal quotation marks omitted)). Additionally, fraud by nondisclosure requires "evidence of a

knowing and deliberate decision not to disclose a material fact." *Cohn v. Knowledge Connections, Inc.*, 266 Va. 362, 368 (2003) (citing *Lambert v. Downtown Garage*, 262 Va. 707, 714 (2001)).

The SAC does not contain specific factual allegations that Murugesan made any false representations to Plaintiffs concerning DAB's purported government contracts. Apart from her signature on the promissory note, the SAC does not allege that Murugesan made any direct statements to Plaintiffs. Thus, as noted above, Plaintiffs' strongest possible theory of liability against her appears to be fraud by omission. However, the SAC fails to allege that Murugesan had knowledge of Ramaraj's fraudulent conduct or misrepresentations, or that she intentionally withheld any material information.

Similarly, Plaintiffs fail to allege sufficient facts to support a fraud claim based on the theory that Murugesan misrepresented her intent to perform when signing the promissory note, as there are no allegations indicating she lacked such intent at the time. Accordingly, the SAC does not present facts adequate to sustain any viable fraud claim against Murugesan.

Again, as discussed above, there is no basis to pierce the corporate veil and hold Murugesan personally liable. As detailed above, while DAB may have been used to facilitate fraud, the SAC fails to allege that DAB was Murugesan's alter ego or that she exercised the degree of control over the company necessary to support veil-piercing under Virginia law.

F.  Counts 3 and 6: Sections 10b and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act")

For the reasons discussed above, Plaintiffs fail to state a claim under Sections 10(b) and 20(a) of the Exchange Act as to Murugesan. Section 10(b) of the Exchange Act prohibits the "use or employ, in connection with the purchase or sale of any security ..., any manipulative or deceptive device or contrivance of such rules and regulations as the [SEC] may prescribe as necessary or

appropriate in the public interest or the protection of investors." 15 U.S.C. § 78j(b). Under SEC Rule 10b-5, it is unlawful to: (a) employ any device, scheme, or artifice to defraud; (b) make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or (c) engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

The Supreme Court has identified six elements necessary to state a private cause of action under Section 10(b) and Rule 10b-5: (1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation. *Matrixx Initiatives Inc. v. Siracusano*, 563 U.S. 27, 37 (2011).

As discussed in connection with Count 1, Virginia Code § 13.1-502(2) closely parallels Rule 10b-5. For the same reasons Plaintiffs fail to state a claim under that provision, they likewise fail to plead sufficient facts to support a claim under Section 10(b) and Rule 10b-5. Specifically, the SAC contains no allegations that Murugesan made any material misrepresentations or knowing omissions, or that she acted with the requisite scienter.

Plaintiffs argue that Murugesan acted with scienter because she "misrepresented the true financial condition of the company when she signed off on the Promissory Note." Dkt. 105. However, Plaintiffs do not identify any specific misstatement in the Promissory Note, nor do they allege facts showing Murugesan knew of Ramaraj's broader fraud scheme. While a strong inference of scienter can arise where "there are sufficient red flags to alert senior officers to the unreliability of statements regarding a company's financial information," the SAC alleges no such

red flags. *See Matrix Capital Mgmt. Fund, LP v. BearingPoint, Inc.*, 576 F.3d 172, 188 (4th Cir. 2009).

Plaintiffs further argue that Murugesan is liable under Section 20(a) of the Exchange Act based on her status as a control person of DAB. However, the SAC does not allege facts showing that Murugesan exercised control—or had the required power to control—Ramaraj or DAB's actions. Nor, as previously discussed, do Plaintiffs allege facts sufficient to support veil piercing under Virginia law. Although DAB may have been used to facilitate fraud, the SAC does not allege that DAB was Murugesan's alter ego or that she exercised the degree of domination and control necessary to disregard the corporate form.

## V.    REQUESTED RELIEF

On the present Motion for Default Judgment (Dkt 97), Plaintiffs seek a judgment against the DRM Defendants under counts 1, 2, 3, and 6, requesting damages of at least $188,000, plus prejudgment interest of 6% annually, postjudgment interest, and attorney fees, expert fees, and costs incurred for this lawsuit. Dkts. 53, 54-1. Specifically, Plaintiffs seek:

- For Count 1, consideration paid by Plaintiffs in the amount of $188,000 and prejudgment interest in the amount of $14,570 pursuant to Va. Code Ann. § 13.1-522. *Id.* This interest amount reflects a 6% annual rate calculated over a period of 15 months and 13 days, spanning from December 1, 2023, to March 14, 2025—the date Plaintiffs filed their Supplemental Memorandum in Response to the Court's February 28, 2025 Order (Dkt. 105).

- For Counts 1, 2, 3, and 6, attorney fees, expert fees, and costs incurred for this lawsuit. *Id.*

- For Count 2, punitive damages against Defendants in an amount determined at trial by jury or by the Court. *Id.*

- For Count 3, out-of-pocket losses, any consequential damages, and any other damages that may apply. *Id.*

- For Count 6, all damages sustained by Plaintiffs as a result of the acts and transactions alleged.

Plaintiffs fail to state a claim for relief against Ramaraj and DAB on all counts; therefore, damages are unavailable against these defendants. Plaintiffs also fail to state claims against Murugesan on Counts 2, 3, and 6. However, as detailed above, Count 1 states a claim against Murugesan, in part, because she committed a direct violation of Section 13.1-522(A)(i) via Sections 13.1-504 and 13.1-507. Accordingly, Plaintiffs may recover damages from Murugesan under Count 1.

<u>Damages under Count 1, violation of the Virginia Security Act</u>

Under the VSA Section 13.1-522 (A), the plaintiff may recover "the consideration paid for [the relevant security], together with interest thereon at the annual rate of six percent, costs, and reasonable attorneys' fees, less the amount of any income received on the security, upon the tender of such security, or for the substantial equivalent in damages if he no longer owns the security." Va. Code Ann. § 13.1-522 (A).

Here, Plaintiffs paid the DRM Defendants $200,000 for the Promissory Note at issue. SAC ¶ 26, Ex 07 ¶ 17, Ex 04. Defendants admit receipt of this amount in the text of the promissory note. Ex 04. Defendants made two payments to Plaintiffs pursuant to the Promissory Note: $6,000 on November 1st and then another $6,000 on December 1st, 2023. SAC ¶ 33. Defendants have not

made any additional payments to Plaintiffs pursuant to the terms of the Promissory Note. SAC ¶ 33.

The undersigned finds that an award for which Murugesan alone is liable is appropriate under Va. Code Ann. § 13.1-522 and commensurate with Plaintiffs' actual loss, consisting of: (1) compensatory damages of $188,000, representing the unpaid balance; and (2) prejudgment interest of $14,570.

The undersigned further concludes that an award of postjudgment interest on the Court's entire award is warranted to ensure that Plaintiffs receive the proper value of their award regardless of when they are able to collect it, and is in fact mandatory under federal law. 28 U.S.C. § 1961(a) ("Interest shall be allowed on any money judgment in a civil case recovered in a district court."); *ExxonMobil Oil Corp.*, 221 F. Supp. 3d at 769 (citing *Quesinberry v. Life Ins. Co. of N. Am.*, 987 F. 2d 1017, 1031 (4th Cir. 1993) ("federal law mandates the awarding of post judgment interest")); *PharMecia East, LLC v. Healthlink of Va. Shores, LLC*, 2020 WL 877983, at *3 (E.D. Va. Feb. 20, 2020) ("In the Fourth Circuit, post-judgment interest can be awarded on the entire amount the court awards."); *Barrella v. Village of Freeport*, 43 F. Supp. 3d 136, 195 (E.D.N.Y. 2014) ("Post judgment interest is available for an award of attorneys' fees arising out of a judgment in the district court.").

However, the undersigned finds that Plaintiffs are not entitled to attorney fees or costs. On February 28, 2025, the Court ordered that Plaintiffs must submit, within 14 days, "justification and a fully drafted fee petition compliant with prevailing legal authority" if they seek attorney fees. Dkt. 103. As of the date of this Report and Recommendation, Plaintiffs have not filed such a petition or justification. Accordingly, no attorney fees should be awarded.

## VI.    CONCLUSION

For the foregoing reasons, the undersigned United States Magistrate Judge recommends that Plaintiffs' Motion for Default Judgment (Dkt. 97) be GRANTED IN PART as to Defendant Murugesan and DENIED as to Defendants Ramaraj and DAB. Specifically, the undersigned recommends that the Court:

- **GRANT** the Motion for Default Judgment (Dkt. 97) as to Murugesan on Count 1 (Breach of VSA Section 13.1-522(A)(i) via Sections 13.1-504 and 13.1-507);

- **AWARD** Plaintiffs $188,000 in compensatory damages and $14,570 in prejudgment interest as to Count 1, and post judgment interest, for which Murugesan alone is liable;

- **DENY** Plaintiffs' Motion for Default Judgment (Dkt. 97) in all other respects; and

- **DISMISS** this civil action in all other respects without prejudice.

## VII.    NOTICE

Plaintiffs are directed to serve by registered mail a copy of this Report and Recommendation on Defendants within seven (7) days of entry of this Report and Recommendation. Plaintiffs are further directed to file a declaration certifying service of this Report and Recommendation on Defendant via the Court's electronic filing system within ten (10) days of entry of this Report and Recommendation. The parties are advised that objections to this Report and Recommendation, pursuant to 28 U.S.C. § 636 and Rule 72(b) of the Federal Rules of Civil Procedure, must be filed within fourteen (14) days of its service. Failure to object to this Report and Recommendation waives appellate review of any judgment based on it.

*William E. Fitzpatrick*

WILLIAM E. FITZPATRICK
United States Magistrate Judge

September 2, 2025
Alexandria, Virginia